McConaghy vs. McMullen and another.

EVIDENCE :    *Irrelevancy.*—*When judgment not reversed for error.*

1.. In an action for an assault, etc., plaintiff's daughter, as a witness for him, having stated that at the beginning of the affray she was standing in the rear of his house some twenty-five rods from the place where the affray occurred, and that she then ran through the house to the other door, was asked by his counsel what caused her to go into the house, and whether it was anything in defendant's appearance or conduct. *Held,* that these questions were properly overruled, as irrelevant.
2. Where the jury found plaintiff not entitled to *any* damages, the judgment cannot be reversed for an instruction which seemed to withdraw from them the question of *exemplary* damages.

APPEAL from the Circuit Court for *Dodge* County.

McConaghy vs. McMullen and another.

Action to recover damages for an assault and battery. The answer was, in substance, first, a general denial; and secondly, an averment that all the acts of the defendant *Duncan McMullen* were done in self-defense against an assault made upon him by the plaintiff.

At the plaintiff's request the following instructions were given : 1. That if defendants assaulted the plaintiff, intending to injure him, they were responsible for any natural consequences of that act. 3. That if the defendant *Alexander McMullen* assented to, aided and abetted the trespass, the verdict should be against both; if they found only one of the defendants guilty, they should find a verdict against him alone. 5. That if *McMullen* intended to injure the plaintiff, it is wholly immaterial at what point of time he formed that intention—whether before or during the struggle—and that question of intention only goes to the question of damages; that a man is presumed to intend the consequences of his own acts; and the act and its consequences being proven, the intention is *prima facie* established. 8. That the intentional depriving one of a thumb would amount to a felony in the law; and that as such an injury inflicted by the means detailed and admitted, is so unusual and barbarous, it would require the clearest and most satisfactory proof to justify it. 9. That if the jury should find that the acts charged were committed by defendants wantonly or intentionally, or that defendant unnecessarily bit off plaintiff's thumb, they should render a verdict : (1.) For such sum as would compensate the plaintiff for his expense, loss of time, and suffering resulting from such injuries, and they might add such damages as they might find from the evidence he might yet suffer, actually resulting from such injuries. (2.) They ought to add exemplary damages, by way of punishment and example; and in arriving at these, might consider any circumstances of aggravation, insult or cruelty attend-

ing the acts proved, and also the pecuniary circumstances of the defendants. Certain others of the instructions asked for the plaintiff, the court modified, either by inserting certain words (here printed in brackets) or by striking out certain words (here printed in italics), viz.: 2. If defendants, without justifiable cause, injured the plaintiff by touching him against his will, they are liable [for actual damages sustained], and cannot be allowed to say it was unintentional, except in mitigation of damages. 6. If *Duncan McMullen* was only defending himself from the assault of the plaintiff, but used more force than was requisite in defending himself, that makes him a trespasser from the beginning, and equally liable, as it was a pure and unjustifiable trespass; for the law does not justify the use of extreme and inhuman measures in self-defense, *but only just enough for that defense, and no more* [unless such are necessary]. 7. Under the pleadings in this action, the defendants, in order to justify the admitted act of the defendant *McMullen,* must prove *that plaintiff actually committed the first assault, and* that what was done was in the necessary defense of their own persons. In other words, the jury must find that it was *actually* necessary for *Duncan McMullen* to bite off plaintiff's thumb, and commit any other injuries which were done by said defendant.

At the defendant's request, the court gave the following instructions: 1. That if plaintiff made an attack on defendant with a club, without provocation, such malicious misconduct might be considered for the purpose of reducing the actual or compensatory, as well as the punitive damages. 2. That "if the jury found from the evidence that plaintiff made an attack upon defendant with a club—a dangerous weapon—defendant had a right to defend himself, to disarm his adversary, and put it out of his power to do him farther injury; and, to do this, had the right to use all

the force necessary to effectually protect himself."
3. That if plaintiff made an attack upon defendant
with a club, the jury could not find punitive damages
unless defendant's acts in resisting the plaintiff were
governed by wanton and malicious motives, and were
without apparent cause. 4. That the law makes allow-
ance for the infirmities of human nature, and for what
is done in the heat of passion, produced by the improper
conduct of the adverse party; and if the injury to
plaintiff was the result of his attack upon defendant,
and happened through defendant's acts in defending
himself, or necessarily resisting plaintiff's attack, and
was without any cruel or malignant intention on de-
fendant's part, plaintiff could not recover. 5. That if
*Duncan McMullen* was attacked by plaintiff with the
club shown in evidence, and if the jury found that it
was a dangerous weapon, and if said defendant, from
said attack, had reasonable ground to apprehend a
design to take away his life, or to do him some great
bodily harm, and for believing the danger imminent
that such design would be accomplished, he had a right
to act upon appearances, and to do whatever was neces-
sary to protect and defend himself, even to the taking
of the life of the plaintiff; and was not to be held re-
sponsible any more, if the appearances proved to be
false, than if they proved to be true.

Verdict for defendants; new trial denied; and plain-
tiff appealed from a judgment on the verdict.

*E. P. Smith,* for appellant, contended, among other
things, that it was error to modify the second instruc-
tion asked by the plaintiff so as to take from the jury
the question of punitive damages (*Bullock v. Babcock,*
3 Wend. 391); that the sixth instruction, so requested,
should also have been given without modification
(*Brown v. Gordon,* 1 Gray, 185); that it was error to
strike out the word "*actually*" in the seventh instruc-
tion, because the answer directly alleged an *actual
assault* by the plaintiff, and in such a case "the burden

McConaghy vs. McMullen and another.

of proof is on the defendant, who will be bound to show that the plaintiff *actually committed the first assault,* and also that what was thereupon done on his own part was in the necessary defense of his person " (1 Greenl. Ev. 395, and cases there cited; 1 Hilliard on Torts (1st ed.), p. 204, ch. 5, § 15; *Frederick v. Gilbert,* 8 Barr, 454); that there was error in the second instruction given at defendant's request, first in charging that the club was a dangerous weapon, and secondly in not limiting it to the case of a *first* assault by the plaintiff, and in not explaining that the force in resistance must not be unreasonable, or disproportioned to that used by the assailant (*Brown v. Gordon,* 1 Gray, 185); that there was no issue presented by the answer as to a defense against *apparent* as distinguished from *real* danger; that the rule as to appearances goes no further than this, that if defendant was deceived by appearances, *and his violence was not extreme,* plaintiff cannot recover except for actual pecuniary injury (*Keyes v. Devlin,* 3 E. D. Smith, 526); that it was the duty of defendant to endeavor to *avoid* the assault, which he clearly did not do, and therefore his acts of resistance, and especially in maiming the plaintiff, could not be justified (*Keyes v. Devlin, supra*); that the only questions for the jury under the pleadings were, whether there was actually a first assault by the plaintiff, and, if so, whether defendant in his resistance made use of an excess of force—whether the *maiming* was actually necessary; and that upon these questions, and especially the latter, the evidence was such that a new trial should have been granted. *Sage v. Harpending,* 49 Barb. 166; 34 How. 1; *Scribner v. Beach,* 4 Denio, 448; *Gregory v. Hill,* 8 Term, 299.

*A. Scott Sloan,* for respondent, argued that the general denial in the answer put in issue plaintiff's right to recover (*Cunningham v. Lyness,* 22 Wis. 250), and defendant might prove under it any facts in mitigation of damages; that the instructions taken together,

submitted the questions fairly to the jury; and that under the view taken by the jury, plaintiff could have been entitled at most only to *nominal* damages, and a new trial will not be granted in such a case.

COLE, J. We really cannot see the pertinency of the questions asked the witness Mary McConaghy, which were excluded by the court. She was standing a little east and back of the plaintiff's house, some twenty-five or thirty rods from where the affray took place. She said that she started and ran through the house towards the other door; and she was asked what caused her to go into the house, and if there was anything in the appearance or conduct of the defendant *Duncan McMullen* which caused her to run into the house. We fully concur in the view expressed by the counsel for the respondents upon this point, that it was entirely irrelevant and immaterial to the issues in this case what motive operated upon the witness's mind to cause her to go into the house. Suppose it was fear on her part, or a reluctance to witness the fight, or a desire to secure a better point of observation; what had this to do with the questions in the case? Nothing whatever, so far as we can see.

We do not think there was any error committed by the court, either in the modifications which were made to the plaintiff's instructions, or in giving those asked on the part of the defendants. Some of the modifications made to the plaintiff's instructions were merely verbal alterations, not essentially changing the meaning. We do not deem it necessary to notice them in detail. The modification in the second instruction complained of, that it took from the jury all consideration of the question of exemplary damages, manifestly could not have prejudiced the plaintiff, inasmuch as the jury found that he was not entitled to recover any damages whatever.

The change in the sixth instruction is rather verbal

than otherwise. The jury were charged that if the defendant *Duncan* was only defending himself from the assault of the plaintiff, but used more force than was requisite for that purpose, *he was a trespasser from the beginning, and equally liable as if it was a pure and wholly unjustifiable trespass;* for the law does not justify the use of extreme or inhuman measures in self-defense, unless such are necessary. The counsel for the defendants claims that this whole instruction is incorrect as a legal proposition, and that the court might well have refused it altogether. We are certainly satisfied that there is nothing in it, as given, of which the plaintiff can complain. The general statement by the authorities is, that if a person acting in self-defense to repel an assault and battery is guilty of an unreasonable and disproportionate degree of violence towards the person of the assailant, he is only liable for the damages caused by such excess. This in substance is the language of BIGELOW, J., in *Brown vs. Gordon*, 1 Gray, 182–185. But no matter. The instruction as given was at least as favorable to the plaintiff as the law would warrant, if not more so.

Again, it said that the seventh instruction should have been given in the very words in which it was drawn. That instruction seems to be framed on the assumption that the answer only contained the defense of *son assault demesne;* but this is a mistake. It likewise contains the general denial. The jury were directed in the instruction as modified, that under the pleadings the defendants, in order to justify the admitted act of the defendant *Duncan,* must prove that what was done was in the necessary defense of their persons—in other words, that it was necessary for self-defense for *Duncan* to bite off the plaintiff's thumb and to commit the other injuries proven to have been done by him. And in the eighth instruction the jury were told, that the intentional depriving one of a thumb would amount to a felony in the law,

and that such an injury, committed in the manner detailed in the evidence, was so unusual and barbarous as to require the clearest and most satisfactory proof of its necessity to justify it.

But not to dwell further upon the instructions, we must say that they seem to be substantially correct as given, or at all events are sufficiently favorable for the plaintiff. We do not think the second one given on the part of the defendants fairly open to the criticism of assuming as a fact that the club, which it appeared the plaintiff had in his hands when the affray commenced, was a " dangerous weapon." The jury had the advantage of seeing the club itself, as it was produced on the trial; and they doubtless considered it a " dangerous weapon," which justified the use of a considerable degree of force on the part of the defendant *Duncan McMullen* in repelling the assault made upon him with it. The jury must have found that an assault of a very aggravated character was first made by the plaintiff, and that all the violence used by the defendant was necessary to protect his own person. It is undeniable that the testimony in the case fully warrants such a conclusion.

We think the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.